**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**LEROY KNIGHT,**

            **Plaintiff,**

**v.**                                                           **Case No. 3:04-CV-252-RV/MD**

**TARGET CORPORATION,**

            **Defendant.**

_____/

**ORDER**

Pending is the defendant's motion for summary judgment.  (Doc. 38).

Following his termination, the plaintiff Leroy Knight alleges that his employer, Target Corporation, discriminated against him in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991 [42 U.S.C. § 2000e, et seq.], and in violation of the Florida Civil Rights Act  [Chapter 760, Florida Statutes]. Further, the plaintiff alleges claims for discrimination in violation of the Americans with Disabilities Act of 1990 [42 U.S.C. § 12101 et seq.] and retaliation in violation of Florida's workers' compensation law [Section 440.205, Florida Statutes]. The defendant now moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Unless otherwise noted, the following facts appear to be undisputed.[1]

---

[1] The plaintiff has failed to respond to Target's summary judgment motion, and has failed to provide a statement of disputed facts in accordance with Local Rule 56.1. Although a failure to respond may constitute grounds for granting the motion, [See N.D. Fla. Loc. R. 7.1(C)(1)], I will address the merits of Target's motion by reviewing the entire record, including the depositions, affidavits, and exhibits submitted by Target. However, unless the record plainly reflects otherwise, all material facts set forth in the statement filed by Target will be deemed to be admitted because the plaintiff has failed to controvert them by filing a statement of disputed facts. See N.D. Fla. Loc. R. 56.1(A).

## I.    FACTUAL BACKGROUND

On May 13, 2002, the plaintiff Leroy Knight, a black male, began working for Target Corporation ("Target") in one of its stores in Pensacola, Florida. The plaintiff's initial position with Target was as a Sales Floor Team Member, which is a Level 1 position.  In November 2000, after having been employed with Target for only six months, the plaintiff applied for the position of Sales Floor Team Leader, which was a Level 3 position.  The plaintiff was not selected for this promotion.

During a subsequent meeting with Pam Meiners, Target's Human Resources Manager, to discuss the feedback that the plaintiff had received from his promotion interview,[2] the plaintiff complained that he felt he was denied the promotion due to racial discrimination.  Particularly, the plaintiff indicated that he did not expect to get promoted because he was "in the south."  Notwithstanding his implied accusation of racial prejudice, the plaintiff could not identify any racially discriminatory comments or conduct which had occurred.   In fact, Meiners informed the plaintiff that the employee who was promoted instead of him was also a black male.  Later that same day, the plaintiff apologized to Meiners for making the racial discrimination complaint.

On May 6, 2001, Plaintiff again applied for a Level 3 Sales Floor Team Leader position.  He was denied this promotion, as well.  One month later, however, the plaintiff applied for a promotion to a Level 2 position in the Movies, Music, and Books Department.  The plaintiff received this promotion.  As a result, he received increased pay and was given more leadership responsibilities.  Particularly, the plaintiff was expected to delegate and direct team members to accomplish specific tasks.

On January 10, 2002, the plaintiff again applied for a Level 3 Sales Floor Team

---

[2] After a Target employee interviews for a promotional position, the interviewer customarily completes a "Follow-up Interview Form," which offers feedback to the employee to assist with future promotional opportunities.  The form identifies the employee's strengths as well as potential developmental needs.

Leader position.  The position was given to Fran Franks, a white female, who was a Level 2 receiving clerk prior to being promoted, and who had been with Target for over five years.  Following the position interview, however, Kim Vincent, the executive team leader who conducted the interview, offered the plaintiff feedback and suggested areas in which the plaintiff might improve, including: effectively communicating, planning, and organizing, such as planning beyond one day ahead, completing an Individualized Development Plan ("IDP") to achieve his goals, and making himself a visible team leader.

In February of 2002, three women separately contacted Meiners complaining that the plaintiff had made inappropriate or sexually charged comments to each of them.  Two of the women were co-workers, while the third woman worked for another company as a vendor who supplied and serviced Target's book department. One of the employees, Kalli Keyes, explained that the plaintiff constantly stated that they "needed to talk," in a suggestive manner, and on one occasion, he told her that she would not need to work two jobs if she had a man to take care of her.  Another employee, Fran Frank, complained that the plaintiff on several occasions had walked over to her department and had told her that he wanted to ask her something, but then he would say, "Never mind.  I'd better not."  On another occasion, the plaintiff told her that he was having trouble sleeping because he wanted something really bad, but he knew he could not have it.  When Frank told him not "to go there," he followed her into the break room, mumbled something and walked away.

The book vendor, Rita Landsgard, informed Meiners that she tried to avoid contact with the plaintiff because he made her uncomfortable.  For example, on one occasion he asked her for a ride home, and he later apologized for asking her for the ride because "she could get him into trouble."  She also explained that the plaintiff repeatedly approached her in the store and in the parking area to ask her, in a suggestive manner, where his Christmas present was.

When Meiners and Derek Derbigny, an executive with Target, questioned the plaintiff about these complaints, he denied that his comments were sexually related and stated that "these young women are confused" and that some of his comments could have been misconstrued by the complainants.  He also indicated during the meeting with Meiners and Derbigny that whoever complained about him may have been lying because he was black. Nevertheless, the plaintiff informed Meiners that he would "just talk business" from that point forward, and avoid making any comments that could be construed as inappropriate.  As a result of the investigation into these complaints, Target issued the plaintiff a "Final Warning" for "conduct that creates uncomfortable, intimidating or hostile work environment."  The "Final Warning" was in effect for the 12-month period commencing on the date it was issued, and the plaintiff was specifically warned to "(1) avoid any remarks that may be considered offensive or inappropriate; (2) avoid suggestive innuendo or implication; and (3) avoid any unwelcome requests to meet, visit, or get together with another team member."

On May 21, 2002, the plaintiff received an annual performance evaluation.  On the evaluation, he received an overall score of 77 out of 100. The plaintiff received high scores regarding guest services and job knowledge, but received some comments pertaining to team work and his ability to complete daily work assignments to maximize results. For example, the evaluator suggested that the plaintiff use his leadership skills to delegate responsibilities and become more involved in the total store. The plaintiff did not agree with his performance evaluation, and he made several specific comments disputing his supervisors assessment of his job performance.

In September of 2002, Plaintiff again applied for a Level 3 promotion. Another Target store in the Pensacola area had two open positions for a Level 3 Sales Team Leader. The plaintiff and twelve other employees who applied for the two open positions were interviewed by Steve Lostroh, an executive at the Target store where the jobs were available.  The plaintiff testified that he did not feel the interview was

fair because Lostroh focused on the negative. The plaintiff was not selected for either position.  Instead, one of the people promoted was Rebecca Gilliam Jay, a white female.  The plaintiff does not know the name, race, of sex of the other person promoted.  Following the interview process, a member of Target's Team Leader management met with the plaintiff to offer feedback concerning his interview and suggested areas in which the plaintiff might improve his chances of being promoted in the future.  The plaintiff's "Follow-up Interview Form" suggested that his strengths were his technical and Target knowledge, but his developmental needs included: "maximize relationships, develop self, motivate and inspire others, enthusiasm."

After being denied this promotion, the plaintiff wrote a letter to Terry Gillespie, Target's Regional Human Resources Manager, complaining that he was not selected because of racial discrimination.  Specifically, the plaintiff complained that there was a lack of racial diversity in the Level 3 position, and that black employees were intentionally denied promotions.  After receiving this letter, Gillespie spoke with the plaintiff and then contacted Meiners to discuss plaintiff's complaint.  Meiners explained to Gillespie that the plaintiff had received an average annual performance evaluation and had received a disciplinary notice only six months prior to the interview. Gillespie testified that typically, employees who are selected for promotion will have a performance review history reflecting scores in the high 80s and 90s.  Further, it would be highly unusual for an employee to be selected for promotion when the employee had received a final warning within the prior twelve months.

Nevertheless, Gillespie and Meiners agreed that in the future, if the plaintiff was denied a promotion, Meiners would follow up regarding the background of the person promoted and document why that person was chosen over the plaintiff.  Meiners and Gillespie also decided to meet with the plaintiff and offer suggestions on how he might improve his chances of obtaining a promotion, including developing an Individualized Development Plan (IDP) that would help him to achieve his career objectives and

identifying specific areas of his leadership skills and performance that were impacting his effectiveness as a team leader.

On October 11, 2002, Tom Thorn, the Target store manager, Ray Gentry, plaintiff's immediate supervisor, and Meiners met with the plaintiff to discuss all of these areas. They also provided the plaintiff with a detailed, sample IDP, and instructed the plaintiff to submit an IDP relating to himself within two weeks. However, the plaintiff did not submit an IDP to Target until five weeks later, despite Meiners' repeated requests to the plaintiff.  When the plaintiff did submit his IDP, Meiners and Gentry informed the plaintiff that it was insufficient because it did not address the specific areas of his performance that they had previously told him he needed to develop.  Thus, Meiners and Gentry asked the plaintiff to submit a revised IDP.  On December 27, 2002, only three days after Meiners and Gentry had instructed the plaintiff to submit a revised IDP, the plaintiff applied for another Level 3 position.  Prior to interviewing for this position, Gentry met with the plaintiff in an effort to help prepare him for the interview.  For example, Gentry conducted a mock interview and provided immediate feedback to the plaintiff.  However, the plaintiff was not selected for this promotion.  Instead, a white female, Kelinda Crawford, was selected.  Crawford had been with Target two years longer than the plaintiff, and she was a former Team Leader in a previous Target store.

Also, in December 2002, the plaintiff suffered a back injury.  The plaintiff claims that he incurred the injury at work while lifting a heavy item.  The plaintiff's physician imposed a "light duty" restriction on his activities at work, and the plaintiff submitted these physician's notes to Target.   Target asked the plaintiff to complete a "Workability Report" so that plaintiff's supervisors could better understand the restrictions the plaintiff's physician had placed on his work duties.  Accordingly, on February 28, 2003, the plaintiff submitted a "Workability Report" completed by his physician indicating that the plaintiff could not lift, carry, push, or pull anything over

21 pounds. This report also noted that the plaintiff's injury was work related.[3]  As a result, Meiners completed an incident report and submitted the report to Target's workers' compensation carrier, Travelers Insurance Company.  After receiving the workers compensation report, Travelers handled the plaintiff's workers' compensation claim.  According to Meiners, Target also accommodated the plaintiff's work restrictions.  The plaintiff continued on his regular work shift with accommodations for lifting certain objects.

On May 8, 2003, Meiners received a complaint that the plaintiff had sexually harassed a customer while she was shopping in the store.  Specifically, Scott Kuchera walked into the store and asked to speak to a manager, complaining that his wife, Cecilia Kuchera, had been shopping at Target with their six-year-old daughter when the plaintiff approached her and asked her if she was married.   When she answered "yes", the plaintiff stated, "That's a shame.  I would like to have had me some of that."   Mr. Kuchera was very upset because his six-year-old daughter had been present during this encounter, and his wife no longer felt comfortable shopping in that Target store.

After listening to Mr. Kuchera, Meiners called Cecilia Kuchera, who confirmed the incident which her husband described.  Cecilia Kuchera also told Meiners that the plaintiff was a customer at the bank where she worked and after the incident in the store, she informed her supervisor at the bank that the plaintiff frightened her, and she did not wish to wait on him when he came into the bank.  After speaking with Cecilia Kuchera, Meiners called Kuchera's boss, Rhonda Watts, who confirmed that Kuchera

---

[3] Target contends that this is the first time that the plaintiff informed Target that his injury was work related.  Meiners claims that previously the plaintiff told her and others that he had injured his back at home.  The plaintiff asserts that Target was aware that he had injured his back at work before he submitted the workability report.  However, this factual dispute is not relevant or material to any of the plaintiff's claims in this action.

came to work very upset about the plaintiff's behavior at the store and requested to not have to attend to the plaintiff when he came into the bank.

On May 16, 2003, Tom Thorn and Pam Meiners informed the plaintiff that a female guest had complained about his behavior, and asked him if he recalled ever asking a female guest whether she was married.  According to Meiners and Thorn, the plaintiff initially denied any such incident, but then admitted that he may have "messed up and asked that to a couple of people," but he explained that he only asked as a sales technique in order to better understand the customer. However, the plaintiff denied ever making any sexually related comments.  During this meeting, Meiners and Thorn advised the plaintiff that an investigation would take place, and that he would be informed of the outcome as soon as it was completed.  At that time, the plaintiff was suspended without pay, pending the investigation.

During the investigation,  Target discovered some other inappropriate comments that the plaintiff had made.  For example, Heather Gravelle informed Target that the plaintiff had told her that he had a dream about her, but he was not sure if he could tell her about it without getting in trouble.  After this incident, the plaintiff repeated several times that he had something to tell Gravelle, but he did not want to get into trouble.   At some point, she replied that he should keep it to himself if it was inappropriate, and he smiled and said, "O.K."  Subsequently, the plaintiff telephoned Gravelle at her home, although she had never given the plaintiff her home phone number or permission to call her.

As a result of the investigation, Thorn, Meiners, and Lynn Collins, a Human Resources Manager with Target's Regional Office, decided that the plaintiff should be terminated for detrimental behavior. Accordingly, on May 28, 2003, the plaintiff was called into work and informed of the termination decision. The plaintiff's termination notice indicated that the reason for his termination was "detrimental behavior." Detrimental behavior is defined by Target's correction action guidelines as "personal

conduct which substantially impairs the team member's ability to function effectively as a team member by reason of its detrimental effect either on the team member's relationship with other team members or on the business or reputation of the Company, whether or not it occurs on Company premises." See Meiners' Aff., Ex. 32.

In June of 2004, the plaintiff filed this complaint alleging racial discrimination and hostile work environment in violation of the Florida Civil Rights Act of 1992 and racial discrimination in violation of Title VII.  Further, the plaintiff's complaint alleges Target retaliated against him for filing a workers' compensation claim or requesting workers' compensation benefits, in violation of Section 440.205, Florida Statutes, and discriminated against him due to a disability, in violation of the Americans with Disabilities Act of 1990, 42 U.S.C.A. Sect 12101, et seq.

**II.   DISCUSSION**

      A.   Summary Judgment Standard

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Rule 56(c), Fed. R. Civ. P.  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265, 273 (1986). See also Morisky v. Broward County, 80 F.3d 445, 447 (11th Cir. 1996).

However, summary judgment is improper "if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact."  Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 594 (11th Cir. 1995).  An issue of fact is "material" if it might affect the

outcome of the case under the governing law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202, 211 (1986).  It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party.  Id. See also Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538, 552 (1986).

Conclusory allegations based on subjective beliefs are insufficient to create a genuine issue of material fact.  See Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000); Ramsey v. Leath, 706 F.2d 1166, 1170 (11th Cir. 1983).  On a summary judgment motion, the record and all reasonable inferences that can be drawn from it must be viewed in the light most favorable to the non-moving party.  Whatley v. CNA Ins. Cos., 189 F.3d 1310, 1313 (11th Cir. 1999).

B.    Racial Discrimination - Failure to Promote

The plaintiff contends that Target racially discriminated against him in violation of the Florida Civil Rights Act ("FCRA") and Title VII of the Civil Right Act of 1964.[4] Because the FCRA was patterned after Title VII, Florida courts have adopted the evidentiary framework applied by federal courts in evaluating Title VII and other federal employment discrimination claims.  Florida State Univ. v. Sondel, 685 So. 2d 923, 925 n.1 (Fla. 1st DCA 1996); Gray v. Russell Corp., 681 So. 2d 310, 312 (Fla. 1st DCA 1996); Brand v. Florida Power Corp., 633 So. 2d 504, 507 (Fla. 1st DCA 1994)(citing cases).  Therefore, for purposes of this motion, the plaintiff's Title VII and FCRA claims will be evaluated together.

_____

[4] Target suggests in its summary judgment motion that the plaintiff's complaint also alleges that the denial of promotions and his termination were in retaliation for his internal complaints of racial discrimination. However, in fact, the plaintiff only alleges that Target's acts were taken "to discriminate against the Plaintiff due to race. . ." Compl, ¶37  & 42. Thus, I do not read the plaintiff's complaint as including a retaliation claim based on either the FCRA or Title VII. Indeed, the only time that the plaintiff's complaint mentions retaliation is with respect to his Florida workers' compensation claim.

The plaintiff contends that he was denied promotions and terminated due to his race.  However, as an initial matter, several of plaintiff's allegations relating to his failure to be promoted are time-barred.  Title VII requires a claimant to file an EEOC charge before proceeding to federal court, and a claimant must file that charge with the EEOC within a statutory time period. 42 U.S.C. §2003-5(e); See also Calloway v. Partners National Health Plans, 986 F.2d 446, 449 (11th Cir. 1993)(holding that the timely filing of a charge of discrimination is a prerequisite to bringing a private suit under Title VII.)  Before a plaintiff may institute a Title VII action in a state, such as Florida, which has a state agency in place with the authority to grant or seek relief from the alleged discriminatory practice, he or she must first file a charge with the EEOC within 300 days after learning of an allegedly unlawful practice or incident. 42 U.S.C. §20003-5(e);  See Maynard v. Pneumatic Products Corp., 256 F.3d 1259, 1262 (11th Cir. 2001); Thomas v. Florida Power & Light Co., 764 F.2d 768, 770 (11th Cir. 1985).  Further, the FCRA requires a plaintiff to file a charge of discrimination with the Florida Commission within three-hundred sixty-five (365) days of the alleged discrimination, rather than the three hundred days required by Title VII. See Fla. Stat. §760.11(a) (2004).

In National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 113, 122 S. Ct. 2061, 2072, 153 L. Ed. 2d 106 (2002), the Supreme Court of the United States explained that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.  Each discrete discriminatory act starts a new clock for filing charges alleging that act." Id.  In fact, the National Railroad Court specifically stated that "(d)iscrete acts such as termination, *failure to promote*, denial of transfer, or refusal to hire" are easy to identify, and constitute separate actionable practices which start the clock on Title VII's statute of limitations. Id. at 114, 122 S. Ct. at 2073 (emphasis added).

In this case, the plaintiff first filed an EEOC charge on June 9, 2003.  Therefore,

any racial discrimination claim which is based on the denial of a promotion which occurred more than 365 days prior, or before June 9, 2002, is not actionable under either Title VII or the FCRA.  In plaintiff's complaint, he alleges that he was denied a promotion in 2001 and 2002.  By way of further explanation, the plaintiff testified that he was denied a promotion in December 2000, May 2001, January 2002, and September 2002. Accordingly, based on the statutory limitations, only the September 2002 promotional process may be considered by this court.  Thus, Target is entitled to summary judgment with respect to the allegations in the plaintiff's complaint that Target discriminated against him prior to June 9, 2002.

Moreover, the plaintiff testified that he had applied for several more promotions after September 2002, but significantly, his complaint does not mention any of these promotions as a basis for racial discrimination. It is well established that a Title VII plaintiff is precluded from raising, in a deposition or a pre-trial motion, claims which were not alleged in the complaint.  Coon v. Georgia Pacific Corp., 829 F.2d 1563 (11th Cir. 1987); See also Pleming v. Universal-Rundle Corp., 142 F.3d 1354, 1357 (11th Cir. 1998)(holding that the "parties frame the scope of the litigation at the time the complaint is filed.")  Therefore, any promotion which the plaintiff was denied after September 2002 will not be considered by this court as a predicate act for racial discrimination because the plaintiff has failed to allege such adverse employment actions in his complaint.  Thus, of all of the promotions for which the plaintiff was denied, only the September 2002 promotion can serve as a predicate for plaintiff's present racial discrimination complaint.

Title VII provides that it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §2000e-2(a)(1).   A plaintiff may establish a claim of discrimination through either direct evidence or circumstantial evidence.  Wilson v. B/E Aerospace, Inc., 376

F.3d 1079, 1085 (11th Cir.  2004).   As in most cases, the plaintiff here has not provided any direct evidence of discrimination.  Absent direct proof of discrimination, in a failure to promote case, the plaintiff must first establish a prima facie case of discrimination by proving that he was: (1) a member of a protected class; (2) qualified for and applied for a position the employer was trying to fill; (3)  he was rejected; and (4) other equally or less qualified people who were not members of the protected class were promoted.  Denney v. City of Albany, 247 F.3d 1172, 1182-83 (11th Cir. 2001)(citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed.2d 668 (1973)).

Once a plaintiff has established a prima facie case, the defendant must rebut the inference of discrimination by presenting legitimate, non-discriminatory reasons for its employment action.  Denney, supra, 247 F.3d at 1183(citing Holifield v. Reno, 115 F.3d 1555, 1564 (11th Cir. 1997)).  This intermediate burden is "exceedingly light." Id.  Once the defendant satisfies this burden, the presumption of discrimination is then rebutted and the employer is entitled to summary judgment unless the plaintiff proffers evidence sufficient to create a genuine issue of material fact that the defendant's proffered reason is merely a pretext for discrimination. Id.

Regarding the September 2002 promotion, the parties do not dispute that the plaintiff was a member of a protected class, he was qualified for the position in which he applied, he was ultimately rejected for the position, and the position was given to a white female.  However, to rebut the presumption of discrimination, Target has proffered a legitimate, non-discriminatory reason for its decision to promote someone other than the plaintiff. Target points out that the plaintiff applied for this position only six months after receiving a final warning for making inappropriate comments, and it would be "extremely rare" for an employee to be promoted to a leadership position within one year of receiving a final warning.[5]  Further, on the plaintiff's most recent

---

[5] See Declaration of Pam Meiners, Ex. 1, p.8.

annual evaluation at the time, he received only an average score, and his supervisor identified areas of plaintiff's team leadership skills that he needed to improve. Moreover, Target contends that the person ultimately promoted to the position of Sales Team Leader instead of the plaintiff had been with the company for a longer period of time than the plaintiff.

Accordingly, to survive summary judgment, the plaintiff must establish a genuine issue of material fact that the employer's proffered reason for the adverse employment action was not its true reason, but was instead a pretext for discrimination.  Cooper v. Southern Co., 390 F.3d 695, 725 (11th Cir. 2004).  In order to establish that the employer's reasons were pretextual, the plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." Id. (quoting Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir.1997)).  Here, the plaintiff has failed to offer any evidence of pretext.  In his deposition, the plaintiff stated that someone else had told him that Rebecca Gilliam, one of the employees promoted, had very little experience, but the plaintiff also admits that he does not actually know what her qualifications and credentials were at the time she was promoted, and he never asked any of the interviewers.

In a failure to promote case, the plaintiff cannot prove pretext by merely showing, much less baldly asserting, that he was better qualified than the person who received the position at issue.  Wilson v. B/E Aerospace, Inc., supra, 376 F.3d at 1090. "We do not ask whether the employer selected the 'most' qualified candidate, but only whether it selected the candidate based on an unlawful motive."  Denney v. City of Albany, supra, 247 F.3d at 1188.  In other words, the plaintiff must "adduce evidence that the disparity in qualifications was 'so apparent as virtually to jump off the page and slap you in the face.' " Cooper v. Southern Co., supra, 390 F.3d at 732(quoting

Cofield v. Goldkist, Inc., 267 F.3d 1264, 1268 (11th Cir. 2001)).  Further, "(f)or the disparities to 'jump off the page and slap you in the face', they must be of such weight and significance that no reasonable person could have chosen" the selectee over the plaintiff.  Id.  The plaintiff has failed to meet this burden.  In fact,  the plaintiff has offered no evidence of Gilliam's actual qualifications or lack thereof.

The plaintiff's other assertions, that the interviewer seem inexperienced at interviewing and seemed to focus only on his negative qualities, do not establish any pretext for racial discrimination.  As the Eleventh Circuit has made clear, the role of a court is to "prevent unlawful hiring practices, not to act as a 'super personnel department' that second-guesses employers' business judgments."  Lee v.  GTE Florida, Inc., 226 F.3d 1249, 1254 (11th Cir. 2000).   Thus, an employer may fail to promote an employee "for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason."  Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1187 (11th Cir. 1984).

Notably, in complaining to Gillespie that the September 2002 promotional process was discriminatory, the plaintiff could offer no evidence of racial discrimination other than his own subjective belief that he was more qualified than the other applicants and that black employees in general were not promoted.  A plaintiff's subjective conclusions, without supporting evidence, are insufficient to raise an inference of intentional discrimination.  Carter v.  City of Miami, 870 F.2d 578, 585 (11th Cir.  1989); Grigsby v.  Reynolds Metals Co., 821 F.2d 590, 597 (11th Cir. 1987).   Instead, the party opposing a summary judgment must come forth with affirmative evidence to support its position.  Anderson v.  Liberty Lobby, 477 U.S. 242, 257, 106 S.Ct.  2505, 2514, 91 L.Ed.  2d 202 (1986). Not only has the plaintiff failed to produce evidence of racial discrimination, but the record actually establishes that Target management went out of its way to help  the plaintiff identify areas of improvement so that he might be a more viable candidate in future promotional

processes.  Despite these efforts, the plaintiff did not submit an adequate and thorough IDP, as instructed by his supervisors, and he did not make any affirmative effort to improve the specific leadership skills which each supervisor who interviewed him consistently identified as lacking in plaintiff's performance. The record is simply devoid of any evidence of discrimination.  Accordingly, Target is entitled to summary judgment with respect to plaintiff's claim that he was not promoted due to racial discrimination.

    C.   Racial Discrimination - Termination

Absent direct proof of discrimination, in termination cases the plaintiff must first establish a prima facie case of discrimination by proving that he was: (1) a member of a protected class; (2) qualified for the position held; (3) terminated; and (4) replaced by a person outside the protected class or the treated less favorably than similarly situated employees outside of his classification. Wilson v.  Aerospace, Inc., supra, 376 F.3d at 1086 (11th Cir.  2004) (citing McDonnell Douglas Corp. v. Green, supra, 411 U.S. at 802, 93 S.Ct. 1817)); Chapman v. AI Transport, 229 F.3d 1012, 1024-25 (11th Cir.2000).  In this case, the plaintiff is a member of a protected class and was terminated.  However, the plaintiff has produced absolutely no evidence of a similarly situated employee outside of his classification who was treated more favorably by Target.   Thus, the plaintiff has failed to establish a prima facie case of racial discrimination in reference to his termination.

Even assuming that the plaintiff had established a prima facie case, Target is still entitled to summary judgment.  The plaintiff's discriminatory termination claim suffers from the same fatal flaw as his discriminatory promotion claim.  The plaintiff has failed to rebut Target's legitimate, non-discriminatory reason for terminating him. Target has introduced ample evidence that plaintiff's termination was due to the fact that a customer had complained that he had made sexually suggestive and inappropriate comments to her while she had been shopping in the store.   This

conduct was similar to the earlier objectionable conduct by the plaintiff for which he had been warned. In response, the plaintiff admits that the customer complaint was made. Even if he did not, the uncontroverted evidence establishes beyond a doubt that Cecelia Kuchera made such a sexual harassment complaint to Target management in May 2003, and Meiners and Thorn confirmed that this complaint was the reason which motivated their decision to terminate the plaintiff.

Rather than attempting to establish pretext for Target's termination decision, the plaintiff essentially disputes whether he actually made the inappropriate comments to the female customer. This argument, even if true, would not prove pretext or discrimination. Certainly, Meiners and Thorne had good reason to believe that Kuchera's complaint was valid. See  Walker v. NationsBank of Florida, N.A., 53 F.3d 1548, 1564 (11th Cir. 1995)(holding that a  plaintiff may not demonstrate pretext by arguing that he did not actually violate a workplace rule). See also e.g., Sweeney v. Alabama Alcoholic Beverage Control Bd., 117 F. Supp.2d 1266, 1273 (M.D. Ala. 2000)("The employee must point to evidence which raises a question as to whether the decisionmaker, in fact, knew that the violation did not occur and, despite this knowledge, fired the employee based upon the false premise of an alleged work rule violation.") Thus, the plaintiff has failed to offer any evidence of pretext or discrimination regarding this matter, and Target is entitled to summary judgment with respect to the plaintiff's claim that he was terminated due to racial discrimination.

D.    Disability Discrimination Claim

The plaintiff also contends that Target discriminated against him due to a disability by failing to provide reasonable accommodations for his back injury.[6]   The

---

[6] To the extent that the plaintiff claims he was terminated due to his disability, this claim must fail for the same reason the plaintiff's Title VII claim fails.  Under the ADA, similar to a Title VII claim, once the defendant to produces a "legitimate, nondiscriminatory reason" for the challenged employment action, the burden shifts back to the plaintiff to prove that the reason offered by the defendant is a pretext for

ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement or discharge of employees, employee compensation, job training and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  In the absence of direct evidence of discrimination, a plaintiff may establish a prima facie case under the ADA by showing: (1) that he was or is disabled as defined by the ADA,  (2) that he was "qualified" for the position in question, and (3) that he was subjected to unlawful discrimination because of his disability. Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1255 (11th Cir. 2001).

Target argues that the plaintiff has failed to establish the first element and the third element of a prima facie case of disability discrimination.  I agree.  Under the ADA, the term "disability" means: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. §12102(2). The Supreme Court of the United States  established a three-step analysis for determining whether the plaintiff has met the first element of a prima facie disability claim.  Bragdon v. Abbott, 524 U.S. 624, 118 S. Ct. 2196, 141 L. Ed. 2d 540 (1998).  As the Eleventh Circuit has explained:

> "First, plaintiff must be impaired. Next, the court must identify the life activity that the plaintiff claims has been limited and determine whether it is a major life activity under the ADA. The regulations interpreting the Rehabilitation Act of 1973 define major life activities as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 45 C.F.R. §84.3(j)(2)(ii). If not contained within these exemplars, the activity must be "significant" to everyday life . . . Finally, the court must determine whether the impairment "substantially limits" that life activity.

---

unlawful discrimination. McDonnell Douglas, supra, 411 U.S. at 802. As discussed supra, the plaintiff has failed to rebut Target's legitimate, non-discriminatory reason for the termination.

> The EEOC defines this phrase to mean "significantly restricted as to the condition, manner or duration under which the average person in the general population can perform the same major life activity." 29 C.F.R. §1630.2(j)(1)

Rossbach v. City of Miami, 371 F.3d 1354, 1357 (11th Cir. 2004).

Here, the plaintiff has failed to identify or even suggest any life activity which he has been limited in performing due to his back injury.  Indeed, the only physical limitation his physician imposed on the "workability report" was that he was not able to lift over 21 pounds.  Notwithstanding, the plaintiff still worked full time for Target and continued to apply for a promotion after he was allegedly injured.  Thus, the plaintiff was still able to work, and he has otherwise failed to establish any life activity which he was limited from performing.  Accordingly, the plaintiff has failed to establish that he has a disability.

Even if the plaintiff had established that he suffered from a disability, the plaintiff must also show he was discriminated against because of his disability.  An employer unlawfully discriminates against an employee if the employer fails to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. §2112(b)(5)(A); Lucas v. W.W. Grainger, Inc., supra, 257 F.3d at 1255.  Target offered the affidavit of Meiners who testified that once the plaintiff submitted his workability report, indicating that he could not lift over 20 pounds, Target immediately accommodated him by not requiring the plaintiff to lift objects within the limitation range.  Further, during this time period, the plaintiff remained on his regular schedule.  On the other hand, the plaintiff has offered no evidence to rebut this.[7]  Notably,  the plaintiff informed Target

---

[7] The plaintiff's complaint alleges that Target did not provide reasonable accommodations, but a pleading is not considered evidence for purposes of summary

of his injury in January 2003, and he continued to work until May 2003, when he was terminated.   The plaintiff offers no evidence that he complained during this time period that his supervisors were not accommodating his physical limitation.  In fact, the plaintiff received an annual evaluation on May 11, 2003, on which he had an opportunity to make comments or note concerns.  Nevertheless,  the plaintiff did not complain at that time that Target was failing to accommodate his needs.  Instead, the record indicates that Target complied with the plaintiff's request.  This claim by the plaintiff has absolutely no support in the record.

     E.    <u>Workers Compensation Retaliation Claim</u>

     Finally, the plaintiff also claims that Target retaliated against him in violation of Florida's workers' compensation law by terminating him after he filed a workers' compensation claim.  Section 440.205 of the Florida Statutes provides: "No employer shall discharge, threaten to discharge, intimidate, or coerce any employee by reason of such employee's valid claim for compensation or attempt to claim compensation under the Workers' Compensation Law."  In this diversity action, Florida law applies to plaintiff's workers' compensation claim, but Florida courts have applied Title VII's retaliation standards to a claim of retaliation under Section 440.205.  <u>See</u> <u>Russell v. KSL Hotel Corp.</u>, 887 So. 2d 372, 379 (Fla. 3d DCA 2004). <u>See</u> <u>also</u>, <u>Posada v. James Cello, Inc.</u>, 135 Fed. Appx. 250, 252-53 (11th Cir. 2005);  <u>Hogan v. Country Club of Brevard, Inc.</u>, 2005 WL 1572985 (M.D. Fla. 2005).

     Thus, to establish a retaliatory termination in violation of Section 440.205, the plaintiff must show: (1) he engaged in statutorily protected activity, (2) he was terminated, and (3) the termination was causally related to the plaintiff's protected

---

judgment.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986)(holding that an adverse party may not rest upon the mere allegations of his pleading to defeat summary judgment).  Here, the plaintiff did not respond to Target's motion for summary judgment, and he has offered no evidence that Target failed to accommodate his physical limitations.

activity.  It is undisputed that the plaintiff suffered an injury to his back, and that Target submitted a workers' compensation claim on his behalf on March 3, 2003, even though it is questionable whether the injury was job related. The plaintiff was subsequently fired on May 28, 2003. Thus, the plaintiff engaged in statutorily protected activity, and he was subsequently terminated.  The two-month gap between the workers' compensation claim and plaintiff's termination may be close enough in temporal proximity to infer a causal connection. See Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1337 (11th Cir. 1999)(Seven weeks sufficient to establish causal connection).

Nevertheless, even if I assume that the plaintiff has established a prima facie case of workers' compensation retaliation, Target is still entitled to summary judgment because the plaintiff has failed to rebut Target's legitimate, non-discriminatory reason for his termination.  There is ample, undisputed evidence in the record to support Target's contention that it fired the plaintiff for inappropriate behavior in the workplace.  The plaintiff has failed to rebut any of this evidence.

## III.  CONCLUSION

For the foregoing reasons, Target's motion for summary judgment (doc. 38) is GRANTED with respect to all of the plaintiff's claims. The Clerk is directed to enter judgment in favor of Target and against the plaintiff, together with taxable costs.

DONE and ORDERED this 7th day of October, 2005.

*/s/ Roger Vinson*

**ROGER VINSON**
**Senior United States District Judge**